■ In the Matter of STATE OF NEW YORK, Respondent, v KEITH F., Appellant. [53 NYS3d 55]—

Order, Supreme Court, Bronx County (James W. Hubert, J.), entered on or about February 19, 2016, as amended by orders entered February 29, 2016, and June 20, 2016, which, upon a determination that respondent is a dangerous sex offender requiring confinement, committed him to a secure treatment facility, unanimously affirmed.

The 60-day deadline by which a trial "shall" be commenced, pursuant to Mental Hygiene Law § 10.07 (a), is not a "strict time limit[ ]" (*Matter of State of New York v Enrique T.*, 93 AD3d 158, 173 [1st Dept 2012], *lv dismissed* 18 NY3d 976 [2012]). As there is no clear legislative intent to make compliance with that time frame a prerequisite to continued jurisdiction (*compare* CPL 30.30 [1]; 18 USC § 3162 [a] [2]), the failure to commence a trial within 60 days does not mandate dismissal of the petition (*see Matter of Grossman v Rankin*, 43 NY2d 493,

501 [1977]; *see also Dolan v United States*, 560 US 605, 611 [2010]). Article 10 of the Mental Hygiene Law states repeatedly that failure to comply with various deadlines does not affect the validity of the petition or the various actions subject to those deadlines (*see* Mental Hygiene Law §§ 10.05 [b], [g]; 10.06 [h]; 10.08 [f]; 10.11 [d] [2], [4]).

As the Fourth Circuit recognized in addressing a delay in the context of a federal sex-offender management program, "[T]he proper remedy would not be release, but to conduct the hearing and adjudicate whether he is a 'sexually dangerous person' under the statute" (*United States v Timms*, 664 F3d 436, 455 n 19 [4th Cir 2012], *cert denied* 568 US —, 133 S Ct 189 [2012]; *see also Matter of Levy v Davis*, 302 AD2d 309, 312 [1st Dept 2003]).

Respondent's due process rights were not violated by the 15-month delay between his declaration of readiness for trial, after the probable cause determination, made upon his waiver of a probable cause hearing, and the start of the trial. Under the four-factor balancing test set forth in *Barker v Wingo* (407 US 514 [1972]; *see also Mathews v Eldridge*, 424 US 319, 335 [1976]), the length of the delay may be considered presumptively prejudicial (*id.* at 530). The second factor, the reason given for the delay (*id.* at 531), weighs only slightly against petitioner, because a considerable portion of the delay is attributable to respondent, the unavailability of the experts, and circumstances beyond petitioner's control.

Respondent is responsible for a five-month period of delay, when he chose to wait for his counsel to return from leave before proceeding to trial. Respondent also delayed the proceedings twice by refusing to appear, on June 12, 2014 and 2015. The delays for which respondent is responsible are not chargeable to petitioner (*see e.g. People v Wiggins*, 143 AD3d 451, 455 [1st Dept 2016], *lv granted* 28 NY3d 1152 [Jan. 3, 2017]). An additional six weeks of delay, based upon petitioner's request for time to finalize its expert report, is not attributable to petitioner, because respondent did not object to the adjournment (*see e.g. People v Abbatiello*, 30 AD2d 11, 15-16 [1st Dept 1968]). Approximately three months of the delay are attributable to the reassignment of the proceeding to a new judge whose docket was full. While *Barker* instructs that neutral reasons such as overcrowding should be chargeable to petitioner, though not weighted heavily (407 US at 531), this delay is not necessarily chargeable to petitioner because the reassignment occurred only after a long delay caused by respondent.

The remainder of the delay was not "substantial" and is "satisfactorily explained" in the record (*People v Mack*, 126 AD3d 657, 657 [1st Dept 2015], *lv denied* 25 NY3d 1167 [2015]; *see also People v Guerrero*, 126 AD3d 613 [1st Dept 2015], *affd* 28 NY3d 110 [2016]). These delays were occasioned primarily by the need of one of petitioner's experts for additional time to finalize his report, the unavailability of the expert witnesses, and technical difficulty in redacting the victim's image from the videotape of the most recent offense. Petitioner "should not be faulted for trying to develop the strongest case possible against" respondent, especially given the serious conduct to which respondent pleaded guilty and the undisputed existence of probable cause to believe that he required confinement (*see People v Wiggins*, 143 AD3d at 457; Mental Hygiene Law § 10.06 [g]).

The third *Barker* factor, respondent's assertion of his rights (407 US at 531-532), weighs in respondent's favor with respect to those adjournments to which he objected. However, his failure to retain any experts for, or to testify in, the article 10 proceedings, his consent to delays, his refusal to appear in court twice, and his engagement in abusive conduct directed against those associated with the proceeding suggest that respondent "did not desire an early judicial hearing" (*United States v $8,850*, 461 US 555, 569 [1983]).

The fourth *Barker* factor, prejudice to respondent (407 US 532), weighs in petitioner's favor. There was no oppressive pretrial incarceration, since respondent chose to be confined at Rikers Island, rather than at a secure mental health facility, during the proceedings (*see In re Commitment of Villegas*, 342 Wis 2d 248, 616 NW2d 350, 2012 WI App 73, ¶ 44-49 [Ct App 2012], *review denied* 344 Wis 2d 302, 822 NW2d 880, 2012 WI 115 [2012]), and respondent's ability to put on a defense was not affected by the delay.

We have considered respondent's remaining arguments and find them unavailing. Concur—Sweeny, J.P., Acosta, Renwick, Moskowitz and Kahn, JJ.